UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JESSICA LYNN SHIPLEY, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | No. 1:15-cv-01123-JMS-DML |
| ) | |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of the Social Security* ) | |
| *Administration*, ) | |
| ) | |
| *Defendant*. ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Jessica Lynn Shipley applied for disability and disability insurance benefits from the Social Security Administration ("SSA") in April 2010, alleging an onset date of January 2007. [Filing No. 13-5 at 2-12.] Her applications were denied initially on June 29, 2010, [Filing No. 13-4 at 2; Filing No. 13-4 at 6], and upon reconsideration on August 16, 2010, [Filing No. 13-4 at 12; Filing No. 13-4 at 15]. An administrative Law Judge ("ALJ") held a hearing and issued a decision on October 27, 2011, concluding that Ms. Shipley was not entitled to receive benefits, [Filing No. 13-2 at 13-25]. The Appeals Council denied review on March 12, 2013. [Filing No. 13-2 at 2.] The district court vacated the ALJ's decision and remanded Ms. Shipley's case back to the Commissioner. [Filing No. 13-11 at 41.] On January 20, 2015, ALJ Ronald T. Jordan held a hearing, [Filing No. 13-10 at 29], and issued a decision on March 19, 2015, concluding that Ms. Shipley is not entitled to receive benefits, [Filing no. 13-10 at 5-20]. Ms. Shipley then filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g). [Filing No. 1.]

## I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Shipley was thirty-nine years old at the time of the hearing, [Filing No. 13-5 at 2], and has a GED, [Filing No. 13-6 at 25], with previous work experience as a spot welder, and in shipping

3

and receiving. [Filing No. 13-2 at 22].[1] Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ ultimately concluded that Ms. Shipley is not disabled. [Filing No. 13-10 at 19.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Shipley meets the insured status requirements of the Social Security Act and has not engaged in substantial gainful activity since January 15, 2007. [Filing No. 13-10 at 7.]

- At Step Two of the analysis, the ALJ found that Ms. Shipley has the severe impairments of depression, anxiety, and obsessive compulsive disorder. [Filing No. 13-10 at 7.]

- At Step Three of the analysis, the ALJ found that Ms. Shipley did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 13-10 at 8.]

- The ALJ concluded that through the date of last insured, Ms. Shipley had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple repetitive tasks requiring no independent judgment requiring the primary work processes with static and predictable work goals from day to day; no work performed at a production rate pace; only occasional superficial interactions [or] contact with the public and coworkers; work can be performed at two hour increments; and with customary 10-15 minute[s] between each stretch of work." [Filing No. 13-10 at 10.]

---

[1] Ms. Shipley detailed pertinent facts in her opening brief, and the Commissioner did not dispute those facts. Because those facts implicate sensitive and otherwise confidential medical information concerning Ms. Shipley, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

- At Step Four of the analysis, the ALJ concluded that Ms. Shipley is unable to perform any past relevant work. [Filing No. 13-10 at 18.]

- At Step Five of the analysis, the ALJ determined that Ms. Shipley is able to perform the following occupations: cleaner at a medium or light exertional level, and inspector at a light exertional level. [Filing No. 13-10 at 18-19.]

- Based on these findings, the ALJ concluded that Ms. Shipley is not disabled as defined by the Social Security Act and, thus, is not entitled to the requested disability benefits. [Filing No. 13-10 at 19.]

Ms. Shipley filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

## III.
### DISCUSSION

Ms. Shipley raises two issues on appeal. First, she claims that the ALJ failed to comply with the Social Security regulations when he assigned less weight to the treating physicians' opinion regarding her psychological impairments. [Filing No. 21 at 6.] Second, she argues that the ALJ erred in assessing her credibility. [Filing No. 21 at 12.] The Court will address the issues in turn.

### A. Treating Physician's Opinion

Ms. Shipley argues that the ALJ failed to comply with the social security regulations by assigning "less weight" to the psychological portion of the opinion from her treating physician, Dr. Koopman. [Filing No. 21 at 6.] She claims that the ALJ misapplied the "not inconsistent" standard in analyzing Dr. Koopman's opinion. [Filing No. 21 at 7-8.] She argues that the ALJ failed to consider her substantial treatment relationship with Dr. Koopman and did not provide "an analytical backdrop" between Dr. Koopman's opinion and the rest of the records. [Filing No. 21

5

at 7-8.] She claims that the ALJ erroneously used the opinion of Dr. Kladder, a state agency physician, to reject Dr. Koopman's opinion, even though the ALJ later afforded "less weight" to Dr. Kladder's opinion. [Filing No. 21 at 8-9.] She takes issue with the ALJ's analysis of an employer report that says she was "not off-task at work." [Filing No. 21 at 9.] Ms. Shipley also claims that the ALJ erroneously used the opinion of Dr. Doup, a state agency physician, to reject Dr. Koopman's opinion, although it is considerably consistent with and would weigh in favor of Dr. Koopman's opinion. [Filing No. 21 at 9-10.]

In response, the Commissioner argues that Ms. Shipley nitpicks the ALJ's decision. [Filing No. 26 at 12.] The Commissioner claims that the ALJ does not need to explicitly state how he weighed every factor under Social Security Ruling ("SSR") 96-2p, and that the ALJ's decision discusses the type of treatment relationship Ms. Shipley has with Dr. Koopman, and the duration and frequency of her treatment with him. [Filing No. 26 at 12-14.] The Commissioner claims that the ALJ also considered other regulatory factors and "drew meaningful distinctions" between the record and Dr. Koopman's opinion. [Filing No. 26 at 14-15.] She claims that Ms. Shipley does not point to authority that states that an "ALJ cannot find two opinions inconsistent with each other and yet give both opinions little or less weight." [Filing No. 26 at 16.] The Commissioner argues that Ms. Shipley fails to explain how Dr. Doup's opinion supports Dr. Koopman's findings. [Filing No. 26 at 18-19.]

Ms. Shipley did not file a reply brief.

A treating physician's medical opinion is entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). If the ALJ opts not to give a treating physician's opinion controlling weight, he must provide a sound

explanation for his reasons in rejecting the opinion. *Roddy*, 705 F.3d at 636. When determining what weight to give the opinion, the ALJ should analyze the following factors: whether the physician (1) examined a claimant, (2) treated a claimant frequently and for an extended period of time, (3) specialized in treating the claimant's condition, (4) performed appropriate diagnostic tests on the claimant, and (5) offered opinions that are consistent with objective medical evidence and the record as a whole. *Roddy*, 705 F.3d at 636-37 (7th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)(i), (ii)).

First, the ALJ did not give Dr. Koopman's psychological portion of the opinion controlling weight because he found it inconsistent with the record. The Court is not able to follow the logic of Ms. Shipley's argument that the ALJ erred when he applied the wrong standard in determining whether to afford Dr. Koopman's opinion controlling weight.[2] Here, the ALJ expressly stated that Dr. Koopman's opinion was *inconsistent* with the record. Specifically, the ALJ stated in relevant part that Dr. Koopman's assessment determined that Ms. Shipley "would likely be off task 25% of the time, is incapable of performing even low-stress work, and is likely to miss more than four days per month due to her impairments." [Filing No. 13-10 at 15.] The ALJ noted that this opinion is not supported by Dr. Koopmans's own clinical findings and is also inconsistent with the opinion

---

[2] Ms. Shipley cites to *Dominguese v. Massanari*, 172 F.Supp. 1087, 1100 (E.D. Wis. 2001), to support her assertion that the ALJ in her case applied the not "consistent" standard. In *Dominguese*, the district court noted that the ALJ applied the wrong standard when he determined that the treating physician's opinion was not "consistent" with the record. The court noted that under that standard, an opinion would only have controlling weight if the record supports it, whereas the "not inconsistent" standard, which is the appropriate standard under the Social Security regulations, "presumes the opinion's prominence and requires the ALJ to search the record for inconsistent evidence in order to give the treating source's opinion less than controlling weight." *Id*. *Dominguese* is distinguishable because here, the ALJ did not apply the wrong standard and specifically noted that Dr. Koopman's opinion was *inconsistent* with substantial evidence from the record.

7

of the state agency physician, the records from Centerstone, Ms. Shipley's mental health treatment facility, and the fact that she continued to work despite her symptoms. [Filing No. 13-10 at 15.]

Contrary to Ms. Shipley's argument, the ALJ provides a thorough analysis of the records that he found to have undermined Dr. Koopman's assessment. For example, the ALJ addressed Dr. Koopman's treatment history and noted that for the most part, past records show that Ms. Shipley was moderately depressed and had intermittent anxiety. The ALJ noted that Dr. Doup's opinion found that Ms. Shipley had difficulty concentrating and difficulty with her auditory and visual memory, that she had a cognitive disorder, and that she may have difficulty "learning and remembering simple instructions due to memory problems" and "concentrating and completing simple tasks due to concentration and depression," but would have no difficulty handling routine changes in the workplace. [Filing No. 13-10 at 15-16.] Although Ms. Shipley argues that this assessment is not inconsistent with Dr. Koopman's assessment, the ALJ also noted that Dr. Doup's opinion deserved great weight because he is a psychologist and an examining source. Moreover, the ALJ noted that the records from Centerstone also demonstrate that although Ms. Shipley experienced significant stress, she had "an animated affect[] with logical and sequential thinking," had no perceptual disturbances, had an insight that was limited but a judgment that was fair, and took medication that helped with mood stability. [Filing No. 13-10 at 12-13.] These reasons are sound and supported by the record.

Moreover, after not affording controlling weight to Dr. Koopman's psychological portion of the opinion, the ALJ applied "less weight" to his opinion and properly considered the factors under 20 C.F.R. § 404.1527(c) in coming to that conclusion. The ALJ did not discuss them in any sequential order, but did raise them generally in his decision. For example, the ALJ discussed the type of treatment relationship and treatment history that Ms. Shipley maintained with Dr.

8

Koopman. [*See* Filing No. 13-10 at 12-15.] The ALJ noted that Dr. Koopman was a physician and not a psychologist, and thus, not a specialist in this field. [*See* Filing No. 13-10 at 16.] The ALJ cited to various medical records from Dr. Koopman regarding his clinical findings of Ms. Shipley's physical and mental impairments, and compared those records to other physicians' findings. [*See* Filing No. 13-10 at 12-16.] Accordingly, the Court finds that the ALJ sufficiently articulated his reasons for affording less weight to Dr. Koopman's psychological portion of his opinion.

### B. The ALJ's Credibility Determination

Ms. Shipley raises several issues regarding the ALJ's credibility determination. She argues that the ALJ makes the assumption that just because she is able to care for her grandson that she is able to engage in substantial gainful employment. [Filing No. 21 at 12.] She claims that the ALJ erred when he gave more weight to that factor. [Filing No. 21 at 12-13.] Ms. Shipley also argues that the ALJ placed more emphasis on the fact that Ms. Shipley worked during the pendency of her claim, although her work did not reach substantial gainful employment, and that even though her jobs exceeded her physical RFC determination, such factor is irrelevant since this claim is "predicated on the fact that she suffers from psychological limitations." [Filing No. 21 at 13-15.] Ms. Shipley points out that although the ALJ determined there was no evidence to support her claim that she worked "over 100 jobs," she claims that she has worked for at least fifty-five employers, which were mostly temporary agencies, and that it is possible that she held "over 100 jobs." [Filing No. 21 at 14.] Lastly, Ms. Shipley claims that the ALJ ignores the fact that Ms. Shipley has not worked since 2011. [Filing No. 21 at 14-15.]

The Commissioner argues that the ALJ found that the record did not support Ms. Shipley's complaints of debilitating symptoms and she points to numerous examples that the ALJ considered

in making that determination. [Filing No. 26 at 19-20.] She claims that the ALJ never equated Ms. Shipley's activities with the ability to perform sustained work, even though he could have considered those activities. [Filing No. 26 at 21.] The Commissioner also argues that Ms. Shipley mischaracterizes her own testimony when she claims that she relies on others for help, and that she has not demonstrated that her activities are as limited as she alleges. [Filing No. 26 at 21-22.] She argues that Ms. Shipley has not provided evidence that shows she has had more than fifty-five jobs, and claims that Ms. Shipley mischaracterizes the ALJ's analysis with respect to some of the evidence. [Filing No. 26 at 22-23.]

Ms. Shipley did not file a reply brief.

Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska*, 454 F.3d at 738. The absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), but when faced with evidence both supporting and detracting from a claimant's allegations, "the resolution of competing arguments based on the record is for the ALJ, not the court[,]" *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). In "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska*, 454 F.3d 738.

The ALJ noted at the beginning of the credibility assessment that "[t]he extent of symptoms and limitations alleged by [Ms. Shipley] are discredited by her continued ability to work, relatively benign objective findings upon examination despite reporting extensive symptoms, non-

10

compliance with medication, and positive response to certain prescribed medications." [Filing No. 13-10 at 11.] The ALJ thoroughly addressed each area and supported his findings by citing to specific evidence from the record. In discussing her activities of daily living, the ALJ listed various activities that Ms. Shipley was able to do besides taking care of her grandson, such as shower every day, dress, groom, do different types of chores inside and outside the house, cook using the stove, oven and microwave, and attend church. [Filing No. 13-10 at 13-14.] The ALJ did not place more weight on her activities of daily living, but rather, took them into consideration among other factors.

The ALJ also properly considered her work history and pointed out that Ms. Shipley worked below the level of substantial gainful activity for various years, but that her ability to continue to work suggests that her symptoms and limitations are not as limiting as she alleges. [Filing No. 13-10 at 11.] He noted that the record reflects that Ms. Shipley's work was identified as one of her strengths. [Filing No. 13-10 at 11.] Moreover, the ALJ did not err when he determined that Ms. Shipley's assertion that she had "over one hundred jobs" was an exaggeration not supported by the record and Ms. Shipley does not point to evidence that would show otherwise. Lastly, and of great relevance, the ALJ pointed out that records from Centerstone in May 2013 show that Ms. Shipley returned for treatment after being absent for over eighteen months primarily because she was "trying to get disability and [her] attorney told [her] to come." [Filing No. 13-10 at 13.] These considerations as well as others thoroughly discussed in the ALJ's decision support the conclusion that the ALJ's credibility determination is far from patently wrong. *See Similia v. Astrue*, 573 F.3d 503, 517 (7th Cr. 2009) (finding that the ALJ's credibility determination was not patently wrong when the ALJ thoroughly analyzed the record and properly considered the

11

claimant's subjective complaints, evidence undermining those complaints, and objective medical evidence).

Thus, the Court finds no error with the ALJ's credibility determination. Ms. Shipley focuses only on some evidence that she claims contradicts the ALJ's credibility finding, but she ignores numerous other considerations cited in the decision that undermine her complaints of debilitating symptoms. Thus, remand is not warranted.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Id.* (*citing Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet*, 364 F. App'x at 274. Taken together, the Court can find no legal basis presented by Ms. Shipley to reverse the ALJ's decision that she was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

Date: June 9, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Timothy E. Staggs
ARNHOLT & STAGGS LAW OFFICE
tim@arnholtandstaggs.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov